UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAULA L., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | Case # 20-cv-1224-DB <br><br> MEMORANDUM <br> DECISION AND ORDER |

## INTRODUCTION

Plaintiff Paula L. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 15, 16. Plaintiff also filed a reply brief. *See* ECF No. 17. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is **GRANTED**.

## BACKGROUND

On August 31, 2016, Plaintiff protectively filed her applications for DIB and SSI, alleging disability beginning July 1, 2015 (the disability onset date), due to anxiety and depression. Transcript ("Tr.") 162-76, 192. Plaintiff's claims were denied initially on December 19, 2016, after

which she requested an administrative hearing. Tr. 18. On January 2, 2019, Administrative Law Judge Paul Georger (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 18. Plaintiff appeared and testified at the hearing and was represented by Albert V. Lowman, Jr., an attorney. *Id*. Timothy P. Janikowski, Ph.D., an impartial vocational expert ("VE"), also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on March 15, 2019, finding that Plaintiff was not disabled. Tr. 18-29. On May 14, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's March 15, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 15, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018;

2. The claimant has not engaged in substantial gainful activity since July 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: supraventricular tachycardia, atrial fibrillation, status/post ablation, major depressive disorder, generalized anxiety disorder, panic disorder, degenerative joint disease of the left elbow and right knee, degenerative disc disease of the cervical spine (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except the claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). She is able to occasionally interact with supervisors, co-workers, and the public. She can occasionally deal with changes in work setting. She can make simple work-related decisions;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on May 6, 1966 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 18-29.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on August 31, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 29. The ALJ also determined that, based on the application for supplemental security benefits protectively filed on August 31, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## ANALYSIS

Plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence and asserts three specific challenges to the ALJ's RFC finding. *See* ECF No. 15-1 at 18-28. First, Plaintiff argues that the ALJ "cherry-picked" the evidence regarding Plaintiff's mental impairments. *See id*. at 19-23. Next, Plaintiff contends that the ALJ failed to reconcile the moderate limitations assessed by treating nurse practitioner Danielle M. Leach Minazzi, FNP ("Ms. Minazzi"), at OLV Family Care Center ("OLV"), with an RFC for a full range of light work. *See id*. at 24-25. Finally, Plaintiff argues that the ALJ erred by failing to incorporate Plaintiff's potential absences due to "panic attacks several times a week" into the RFC, pointing out that the VE testified employers typically only tolerate one absence per month. *See id*. at 26.

The Commissioner argues in response that the ALJ properly reviewed the evidence as a whole, including records from Plaintiff's treating sources, and correctly assessed an RFC that was supported by substantial evidence. *See* ECF No. 16-1 at 5-12. Further, argues the Commissioner, the ALJ's step five finding for light work was supported by substantial evidence. *See id*. at 12-14.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ carefully considered the evidence of record, including the medical opinion evidence and treatment notes, and properly relied on numerous unremarkable objective findings of record that were inconsistent with Plaintiff's subjective complaints, and the ALJ's RFC determination was supported by substantial evidence.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC]

is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Plaintiff first argues that the ALJ's mental RFC finding is unsupported by substantial evidence because Plaintiff's mental health care provider adjusted her psychiatric medications and she had "daily" panic attacks. *See* ECF No. 15-1 at 19-23. Contrary to Plaintiff's assertion, a doctor

7

adjusting an individual's psychiatric medications over time does not suggest that the individual is precluded from working or that her condition is not improving. *See Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 576 (S.D.N.Y. June 19, 2018) (Increases in dosage of claimant's prescribed medications were insufficient to demonstrate that claimant was disabled where medical records established that claimant had shown improvement with consistent use of medication, and ALJ accurately described notes of treating psychiatrists, including recommended adjustment of claimant's medication and normal mental status findings).

As highlighted by the ALJ, record evidence showed that Plaintiff's mental health condition improved with therapy and medication. Tr. 25. It is proper for the ALJ to consider improvement with treatment. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (improvement with treatment is properly considered in concluding claimant not disabled); *Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function). On September 25, 2015 and October 20, 2015, Plaintiff told Ms. Minazzi that she was doing well with individual and group counseling and medication was improving her anxiety. Tr. 317, 319. On March 15, 2017, Ms. Minazzi remarked that Plaintiff "looks well." Tr. 476. In May 2018, David Pfalzer, Psy. NP ("Mr. Pfalzer"), at Spectrum Human Services ("Spectrum"), reported that Plaintiff was doing better with medication adjustments. Tr. 634, 637. Thus, contrary to Plaintiff's argument, the adjustments in Plaintiff's medication regimen does not render the ALJ's opinion unsupported by substantial evidence.

In addition, mental status findings continuously showed that Plaintiff was alert and fully oriented. Tr. 314, 332, 335, 367, 370, 506, 508, 510, 512, 570, 637, 640, 653. She also had an

appropriate mood and affect and intact memory. Tr. 314, 326, 332, 367, 477, 506, 508, 510, 512, 570, 640, 653. In November 2016, consultative examiner Gina Zali, Psy. D. ("Dr. Zali"), reported that Plaintiff was cooperative and fully oriented and that she related adequately. Tr. 379. Plaintiff had intact attention and concentration, average intellectual functioning, and good insight/judgment. Tr. 380.

In January 2017, Mr. Pfalzer noted that Plaintiff continued to experience daily panic attacks "with no specific trigger," but in the same treatment note, he stated that Plaintiff identified "multiple family and soc[i]al stressors as primary stressors." Tr. 510. Deficits in mental health brought upon by situational stress are not necessarily disabling. *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 83-84 (2d Cir. 2015) (finding that behaviors precipitated by situational factors rather than longitudinal manifestations of psychological disorders belied the presence of totally disabling functional limitations); *Denea v. Comm'r of Soc. Sec.*, No. 18-CV-779, 2020 WL 994672, at *6 (W.D.N.Y. Mar. 2, 2020) (Although the record showed that plaintiff handled stress poorly at times, the factors cited by plaintiff that caused him stress were largely episodic and/or situational rather than disabling); *Morgan v. Colvin*, No. 6:14-cv-0549 (LEK), 2016 WL 3527907, at *15 (N.D.N.Y. June 23, 2016) (situational stressors are not a basis for a finding of disability). On mental status examination, Plaintiff was dressed and groomed appropriately; she was alert and fully oriented; she had intact recent and remote memory; and she denied any paranoia, delusions, hallucinations, and suicidal/homicidal ideations. *Id*.

In July 2017, despite complaining of some situational anxiety due to her daughter's failing marriage, Plaintiff was alert and fully oriented with an intact memory. Tr. 514. By October 2017, Plaintiff reported a reduction in her overall anxiety while in public places. Tr. 596. Although Plaintiff argues that she later identified no improvement in her social anxiety (*see* ECF No. 15-1

9

at 20), she told Mr. Pfalzer that she had determined her own way of coping with the issue and, as a result, Mr. Pfalzer said this treatment objective had resolved. Tr. 526, 687. By July 2018, Mr. Pfalzer continued to report that Plaintiff was alert and fully oriented. Tr. 631. Plaintiff had a euthymic mood, intact memory, and a full affect. She reported that her anxiety had improved with the addition of Prozac to her medication regimen. Tr. 631.

Mr. Pfalzer's April 2017 opinion that Plaintiff had no limitations in understanding and remembering instructions, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior, and maintaining basic standards of personal hygiene further supports the ALJ's mental RFC finding. Tr. 500. Mr. Pfalzer further opined that Plaintiff had only moderate limitations in carrying out instructions, maintaining attention/concentration, and functioning in a work setting at a consistent pace (Tr. 500), which is also consistent with the ALJ's mental RFC for a range of simple work. *See Martinez v. Comm'r of Soc. Sec.*, No. 16-CV-0908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) (finding that an RFC determination for unskilled work is not necessarily inconsistent with moderate mental limitations and noting that the Second Circuit has recognized that moderate mental limitations do not prevent a claimant from performing unskilled work) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). Further, the ALJ properly rejected Mr. Pfalzer's March 2018 opinion that Plaintiff was "very limited" in her ability to function in a work setting because it was inconsistent with the essentially unremarkable objective mental status findings. Tr. 27, 314, 326, 332, 367, 380, 477, 506, 508, 510, 512, 570, 640, 653. Furthermore, the ALJ properly afforded little weight to Mr. Pfalzer's statement that Plaintiff could not work because it is an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) ("[a] statement by a medical source that you are

'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Tr. 26, 431.

In addition, Mr. Pfalzer's opinion that Plaintiff could not have social interaction with others due to her chronic pain and agoraphobia was based on Plaintiff's subjective complaints and inconsistent with the objective findings of record showing that she is cooperative and related adequately. Tr. 314, 326, 332, 367, 477, 506, 508, 510, 512, 570, 640, 653. *See Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. Jul. 16, 2009) (ALJ properly discounted doctor's findings when findings were based on the "unreliable foundation" of claimant's unsupported allegations). Plaintiff also reported socializing with friends and family by visiting, shopping, and going to dinner with others. Tr. 204, 520.

Moreover, although Plaintiff alleged panic attacks occurring several times a week (Tr. 510), there are numerous findings indicating that Plaintiff's symptoms worsened when she was non-compliant with medication and therapy treatment. *See* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017) (a claimant's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure); *Campbell v. Comm'r of Soc. Sec.*, 465 F. App'x 4, 6 (2d Cir. Jan. 6, 2012) (Court considered that when the claimant had seizures it was often caused by his failure to take medications); *Snitzer v. Astrue*, No. 09-CV-2705, 2011 WL 1322274, at *10 (E.D.N.Y. Mar. 31, 2011) (court noted that the claimant did not offer a persuasive reason for his failure to seek treatment). On January 5, 2015, Plaintiff said she felt panicky and that she had a burning sensation over her body after admitting she had not taken her Lorazepam for two days. Tr. 328. On October 7, 2016, Plaintiff told Mr. Pfalzer that she was irritable, but admitted not taking her Wellbutrin for

the past month. Tr. 506. On March 15, 2017, Mr. Pfalzer reported that Plaintiff had struggled with attendance during the last review period and that he was trying to contact Plaintiff. Tr. 513. With regards to her alleged fatigue affecting her ability to work (*see* ECF No. 15-1 at 24), Plaintiff admitted that she inconsistently used her CPAP machine for sleep apnea. Tr. 520.

For all the reasons cited above, Plaintiff's argument that the ALJ inappropriately cherry-picked the evidence regarding Plaintiff's mental impairments is meritless, particularly given the consistently normal mental status examination findings and Plaintiff's improvement with medication. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (2017); 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ explained his reasoning and provided ample citations to the record to support his findings.

Plaintiff's argument that the ALJ's physical RFC finding is unsupported by substantial evidence is similarly unavailing. The gist of Plaintiff's argument is that moderate limitations such as those assessed by Ms. Minazzi (*see* Tr. 498) are not consistent with an RFC for a full range of light work. *See* ECF No. at 24-25. Plaintiff is mistaken. Moderate limitations are frequently found to be consistent with an RFC for a full range of light work. *See, e.g., Harris v. Comm'r of Soc. Sec.*, No. 09-CV-1112, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011), *report and recommendation adopted*, 2011 WL 3652201 (Aug. 17, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and reaching . . . consistent with the ALJ's conclusion that Plaintiff could perform light work"); *Vargas v. Astrue*, No. 10-CV-6306, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work); *Bass v. Colvin*, No. 13-CV-01062, 2014 WL 2616190, at *6 (W.D. Ark. June 12, 2014) (doctor's assessment that plaintiff had "'moderate' limitations in walking, standing, lifting, and carrying . .

. do not appear to be inconsistent with the ALJ's finding that [p]laintiff can perform light work"); *Hazlewood v. Comm'r of Soc. Sec.*, No. 12-CV-798, 2013 WL 4039419, at *7 (N.D.N.Y. Aug. 6, 2013) (doctor's opinion that plaintiff had "mild to moderate limitations in walking, pushing, and pulling" supported the "ALJ's determination that plaintiff could physically perform light work"). Thus, the ALJ's determination that Plaintiff was limited to light work accounts for the moderate physical limitations identified by Ms. Minazzi, and the RFC is consistent with her opinion.

The record is also replete with findings that Plaintiff could perform the exertional requirements of light work. Treatment notes showed that Plaintiff was neurologically intact (Tr. 332, 336); she had a normal gait and full strength and range of motion throughout her extremities (Tr. 367, 370, 386-87, 420, 423, 483); and she had intact hand and finger dexterity and full grip strength bilaterally (Tr. 387). As the ALJ noted, none of these findings are consistent with Plaintiff's allegations of disabling musculoskeletal symptoms. Tr. 26. He also noted that Plaintiff has not undergone any surgery, physical therapy, or chiropractic care for these complaints and does not take any prescription pain medications. *Id*. In February 2017, x-rays of Plaintiff's right knee and left elbow were mostly benign.  Tr. 469. She had mild degenerative changes in the right knee and very minor spurring in the left elbow.

Plaintiff's cardiologist, John J. Cai, M.D. ("Dr. Cai"), opined that from a cardiovascular standpoint, Plaintiff had "miniscule" activity limitations. Tr. 26, 432. The ALJ also discussed Plaintiff's allegations of headaches related to her neck, noting that she did not report these complaints to her providers; her neurological findings were normal; and she had not treated with a neurologist other than for the EMG performed to evaluate her foot pain. Tr. 26, 423, 443, 570. The ALJ explained that based on these mostly benign clinical findings, he limited Plaintiff to the lifting requirements of light exertion with no reaching limitations. Tr. 26.

The ALJ also considered that Plaintiff is able to perform housework, grocery shop, care for her pets, do crafts, go to a senior center with her mother-in-law once a week, and watch her grandchildren. Tr. 26, 57-58, 380, 385, 653. In July 2018, she reported being very busy watching her grandchildren five days per week. Tr. 26, 653. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore*, 566 F.3d at 307 (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

Plaintiff also argues that the ALJ erred by failing to make any findings with respect to potential absenteeism or off-task time due to Plaintiff's alleged panic attacks. *See* ECF No. 15-1 at 26-27. As Plaintiff points out, the VE testified that employers typically tolerate only one absence per month, or 12 days of absence over the course of a year. Tr. 67. However, Plaintiff's argument that she would be unable to work due to her alleged panic attacks is speculative. *See O'Connor v. Comm'r of Soc. Sec.*, No. 11-CV-1425, 2013 WL 1180963, at *5 (N.D.N.Y. Mar. 20, 2013) (ALJ properly rejected physician's opinion regarding plaintiff's absenteeism rate of four days a month, despite some evidence to the contrary, where "objective medical evidence in the record provid[ed] substantial evidence to support the ALJ's finding that [the opinion] is speculative."); *Palmer v. Berryhill*, No. 17-CV-6260, 2018 WL 3537074, at *5 (W.D.N.Y. July 23, 2018) (ALJ was entitled to discount nurse practitioner and physician's opinion that plaintiff would be off task more than 20% of an eight-hour workday and absent from work more than four days per month as speculative,

and not based on any documented observation or evaluation, "because the SSA's regulations authorize [the ALJ] to discount an opinion that lacks support, particularly medical signs and laboratory findings, and is not well explained.").

This case stands in stark contrast to an individual who may require extensive medication treatments for several hours a day, necessitating a need to incorporate absences into the RFC determination. *See Wiltsie v. Comm'r of Soc. Sec.*, No. 17-CV-1201, 2019 WL 3219320, at *8 (W.D.N.Y. July 17, 2019) (claimant had frequent, unexpected hospitalizations, sometimes lasting weeks); *Quinto v. Berryhill*, No. 17-CV-00024, 2017 WL 6017931, at *9 (D. Conn. Dec. 1, 2017) (claimant needed to undergo nebulizer treatments every four hours); *Bellinger v. Comm'r of Soc. Sec.*, No. 17-CV-1692, 2018 WL 6716092, at *3 (D. Conn. Dec. 21, 2018) (claimant needed to spend three hours per week receiving IV infusions).

Furthermore, as discussed above, there is evidence in the record that Plaintiff's panic attacks were related to situational stressors, and her mental examination findings were generally benign. Tr. 25, 508, 510. In spite of Plaintiff's reports of increased anxiety due to worrying about her daughter's relationship, December 2016 examination findings were unchanged from the previous visit. Tr. 25, 508. In January 2017, Plaintiff admitted that her panic attacks were improved with medications, although she alleged that they still impacted her functioning. Tr. 25, 510. Although Plaintiff sometimes had anxious mood and affect and reported good and bad days due to family stressors, she otherwise had normal mental status examination findings. Tr. 25, 510, 514.

By October 2017, Plaintiff reported a reduction in overall anxiety out in public places. Tr. 25, 596. March 2018 mental status examination revealed dysthymic mood but full affect, while May 2018 examination revealed restricted mood but was otherwise normal. Tr. 25, 634, 637. She was also doing better with medication adjustments. *Id*. Although Plaintiff reported that she felt

"blah" with low energy in July 2018, she also reported that her anxiety was "pretty well controlled," and she had been watching her grandchildren five days per week. Tr. 25, 653. In addition, as discussed above, Plaintiff had fairly extensive activities of daily living despite these alleged panic attacks,. Tr. 55, 57, 200-02, 296, 380, 385, 563, 565, 631, 653. Accordingly, the ALJ reasonably did not include any findings with respect to potential absenteeism or off-task time due to Plaintiff's alleged panic attacks.

Plaintiff's argument that the ALJ's step five finding is unsupported by substantial evidence merely rehashes Plaintiff's RFC argument, and therefore, fails for all the same reasons. According to Plaintiff, had the ALJ found that she was limited to sedentary work, she would have been found disabled under the Medical-Vocational Guidelines. *See* ECF No. 15-1 at 26. However, as discussed above, the ALJ's RFC finding for light work is supported by substantial evidence, and therefore, it was not necessary for the ALJ to pose hypothetical questions containing limitations that were not credibly established by the record. *See McIntyre v. Colvin*, 158 F.3d 146, 151 (2d Cir. 2014) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983) and *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)) (ALJ may rely on vocational expert testimony regarding a hypothetical so long as there is substantial evidence to support the assumptions therein and they accurately reflect the claimant's limitations and capabilities); *see also Dumas*, 712 F.2d at 1554, n. 4 (ALJ does not have to accept vocational expert testimony responding to a hypothetical question containing a limitation not supported by substantial evidence); *Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011) ("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge"). Accordingly, the Court finds no error at step five.

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude her performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) ((The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.)); *see also Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[Commissioner] is entitled to rely not only on what the record says but also on what it does not say."). Plaintiff here has not met her burden.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id.* at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here has failed to meet this burden.

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the medical opinion evidence, treatment reports, and diagnostic

testing, as well as Plaintiff's activities of daily living, and his findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE